UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CARL FORSELL,** | ) | CASE NO. 5:22-cv-01454-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HENDERSON |
| | ) | |
| **SQUIRRELS LLC , et al.** | ) | DEFENDANT DAVID STANFILL'S |
| | ) | MOTION TO DISMISS THE AMENDED |
| Defendants. | ) | COMPLAINT |
| | ) | |
| | ) | |
| | ) | |

Newly added Defendant David Stanfill hereby moves to dismiss the Amended Complaint filed by Plaintiff against him. As explained below, Plaintiff has no evidence of any fraudulent transfers by Defendant Squirrels LLC to David Stanfill. As such, and because Plaintiff is merely guessing, the allegations in the Amended Complaint as to fraudulent transfers are necessarily very vague. However, those vague allegations are sufficient enough to show that any fraudulent transfer claims against Mr. Stanfill are barred by the applicable statutes of limitations. In addition, to the extent that Plaintiff attempts to assert a claim based on (alleged) actual intent to defraud, the claim is not pled with sufficient particularity under Civil Rule 9(b).

For these reasons, pursuant to Civil Rule 12(b), the Court can and should dismiss the Amended Complaint as to David Stanfill.

**FACTS**

    **A. Background.**

Section B below provides the facts that directly support dismissal of the Amended Complaint. However, the following background will help by providing the Court some context.

Plaintiff is the principal of a Singapore-based firm called Nonce Pte, Ltd. ("Nonce"). Nonce is purportedly in the business of processing and mining cryptocurrencies. (Amended Complaint, ¶ 1).  Cryptocurrency (also referred to as cybercurrency) is a decentralized digital asset. That is, while the federal government issues the U.S. dollar, and the banking system verifies large transactions in dollars, cryptocurrency is privately verified by computer networks distributed across a large number of computers outside of government or central control.  The "ledgers" that track cryptocurrency transactions are available to anyone with a computer and the appropriate software.  These ledgers are called "blockchains,"  and are literally chains of data "blocks" where each block records a number of cryptocurrency transactions.  A blockchain is a tamper-resistant record of who owns what units of cryptocurrency that prevents a person from spending a particular unit twice.

Cryptocurrency "mining" is the process of confirming the validity of cryptocurrency transactions by evaluating blockchains to establish the provenance of particular units of cryptocurrency.  Cryptocurrency mining can be done by anyone with the appropriate equipment, software, and access to the particular network. Multiple cryptocurrency "miners" check each cryptocurrency transaction.  Cryptocurrency miners are compensated for confirming a particular transaction, but only if they are the first among the various competing miners confirming that blockchain who also solve an additional complicated cryptographic computing problem. Cryptocurrency mining is highly competitive, and being the first to solve the cryptographic computing problem depends upon a miner having ever increasing computing speed and power, along with the maintenance of cutting edge technology.  This process is resource-intensive and requires significant computational power, consuming a lot of electricity.  SQRL (but not Squirrels) designed and sold hardware for the cryptocurrency market.

Plaintiff claims that Nonce engaged in this industry. According to documents attached to the Amended Complaint as Exhibits A through J, Nonce placed a series of orders **with Defendant Allmine, Inc**. ("Allmine") for cryptocurrency mining computer components (hereinafter referred to as "boards") made by Squirrels Research Labs, LLC ("SQRL"), a company separate from Defendant Squirrels.  Nonce paid for the purchases, but when a delay in delivery was announced Nonce requested a refund, and SQRL agreed to the refund.  SQRL was prepared to pay (indeed the Amended Complaint notes that several other refunds were made (Amended Complaint, ¶ 25)), but Nonce and Plaintiff fell out of contact with SQRL for about two years, and when they resurfaced SQRL was financially unable to pay.  SQRL ultimately filed for Chapter 11 bankruptcy protection on November 23, 2021, in the United States Bankruptcy Court for the Northern District of Ohio, Case No, 21-61491.

This is not the first time that Plaintiff, claiming to be Nonce's assignee, has filed suit on those claims.  Indeed, Plaintiff originally **sued *SQRL*** in this Court, which matter was assigned Case No.  5:21-cv-02122.  There Plaintiff alleged that it contracted **with SQRL** and that SQRL was liable for the refund claim that is the subject of this case.  Next, Plaintiff filed a claim as a creditor in the SQRL bankruptcy, again asserting that SQRL was the obligor on the subject refund claim.  In connection with that bankruptcy proceeding, previous counsel for the Plaintiff conducted a Rule 2004 deposition of David Stanfill on April 12, 2022.  Prior to that deposition SQRL produced a number of documents requested by Plaintiff's counsel.

In the deposition Plaintiff learned that SQRL and Squirrels are separate and distinct entities.  Indeed, this fact is admitted in the Amended Complaint (at ¶25, n. 4).  Plaintiff also learned that Squirrels creates and licenses software unrelated to cryptocurrency, and that Squirrels provided payment processing and other "back office" services to SQRL in the latter's early days,

3

pursuant to a contract between those parties. Squirrels has never made or sold hardware, including cryptocurrency boards or anything like them, and this was likewise made clear at the deposition.

As a result of the bankruptcy, Plaintiff presumably decided that SQRL was uncollectible and not worth pursuing because it then filed the instant matter **against Squirrels.** In doing so Plaintiff changed his story to now contend that Nonce contracted **with *Squirrels***, rather than SQRL, for the boards. Curiously, the Complaint and Amended Complaint barely even mention SQRL at all, despite the fact that SQRL made and sold the boards.

Although Plaintiff filed this matter on August 15, 2022, Plaintiff has conducted no discovery. It is therefore curious why Plaintiff only now tries to add David Stanfill to this action, given that Plaintiff has gained no new information about the underlying facts since filing this matter that might lead to a reason to amend the Complaint. The claim against Mr. Stanfill is also peculiar for a fraudulent transfer because the alleged obligor (Squirrels) is not defunct and uncollectible. Indeed Squirrels is a thriving business. Thus, there is no need to add Mr. Stanfill other than, perhaps, harassment.

**B. Allegations supporting dismissal of the Amended Complaint as to David Stanfill.**

The "amendment" in the Amended Complaint is the addition of a count for fraudulent transfer against David Stanfill, a former officer of Squirrels. However, Plaintiff does not allege any details whatsoever about the alleged fraudulent transfers because Plaintiff has no idea whether there were any such transfers or not. Plaintiff cannot point to a single specific payment to David Stanfill. Instead, Plaintiff just assumes that David Stanfill got paid at some time by Squirrels and presumably Plaintiff hopes that the payment or payments coincided roughly with the time Nonce paid Allmine. That is, Plaintiff is simply guessing that there were some payments to Stanfill, and

4

hoping that such payments fortuitously occurred around the time of the subject transfers from Nonce to Allmine. If so, then Plaintiff apparently believes he can try to recover from Mr. Stanfill, despite the fact that Squirrels remains in business.

As a result of there being no such fraudulent transfers the Amended Complaint contains absolutely no detail about the alleged transfers. It simply claims that "[f]ollowing the transactions subject to this lawsuit, Mr. Stanfill, in his individual capacity, was the recipient of monetary transfers from Squirrels, including funds belonging to Mr. Forsell." (Amended Complaint, ¶ 48). While the Amended Complaint merely alleges (for the most part)[1] that Nonce paid Allmine, it fails to indicate that the money was transferred to Squirrels and fails to allege how Squirrels got the money that it allegedly transferred to David Stanfill. Likewise, the Amended Complaint fails to identify how many fraudulent transfers occurred. It further fails to identify a specific date or dates for the transfers, merely claiming that "[u]pon information and belief, the monetary transfers from Squirrels to Mr. Stanfill occurred **shortly after** the transactions subject to the lawsuit that resulted in a debt due and owing to Mr. Forsell in the amount of $774,373.60, as agreed by Squirrels." (Amended Complaint, ¶ 54, emphasis added). Finally, the Amended Complaint fails to describe the means by which the funds were transferred to Mr. Stanfill. Instead, the Amended Complaint merely recites some of the elements of a claim for fraudulent transfers are present.

Despite this vagueness, one inference that can be necessarily drawn from the Amended Complaint is that the transfers allegedly took place a sufficiently long time ago that the relevant statues of limitations have run. Plaintiff's concession that the alleged fraudulent payments were made "shortly after" Nonce's transactions with SQRL means that they supposedly happened shortly after June 28, 2018. This Motion explains below that any transfers before March 29, 2020

---

[1] The Amended Complaint alleges that the first 7 transactions were between Nonce and Allmine, and claims only that the last 3 were between Nonce and Squirrels. (Amended Complaint,¶¶ 11-20).

5

are barred by the applicable statutes of limitations. March 29, 2020 (four years before the amended complaint was flied) is 21 months after June 28, 2018. Under no reasonable interpretation could the term "shortly after" mean 21 months later. As such according to the allegations of the Amended Complaint, the purported transfers occurred more than four years before the Amended Complaint was filed.

For these and other reasons a explained more fully below, the Court can and should dismiss the Amended Complaint as to David Stanfill.

**LEGAL BASIS FOR DISMISSING THE AMENDED COMPLAINT AS TO DAVID STANFILL**

**A. Legal Standard.**

When deciding a motion to dismiss under Federal Civil Rule 12(b) (6), of course, the Court must accept the complaint's allegations as true and must view the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59 (1984), *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). However, Rule 12(b)(6) requires more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

**B. Plaintiff has failed to plead his actual intent (§1336.04(A)(1)) claim with particularity, and that claim is also barred by the statute of limitations.**

The fraudulent transfer claim based on actual intent fails for two independently sufficient reasons. First, Plaintiff fails to allege the claim with the requisite particularity. That alone requires

6

dismissal. Second, Plaintiff filed the claim long after the statute of limitations ran, and Plaintiff has failed to allege any facts (as required) that would provide a basis for application of the discovery rule in §1336.09(A) to extend the statute of limitations.

Plaintiff expressly references §1336.04(1)(A) as one of two legal bases for his fraudulent transfer claim. That section, which addresses actual intention to defraud creditors, states in pertinent part as follows:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

As explained above, Plaintiff alleges no details about this claim. That is, he just recites the elements. Among other things, Plaintiff omits the number and amount of alleged transfers, the dates, and the means of those transfers. The reason for this, of course, is because Plaintiff is not aware of any such transfers. He is just guessing that they occurred, hoping that the timing of the imagined transfers, if discovered, will be fortuitous enough to support his claim. Unfortunately for Plaintiff, the Civil Rule 9(b) particularity requirements apply to pleading a claim under §1336.04(A)(1), and Plaintiff has failed to satisfy them.

Civil Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This requirement applies to pleading the elements of a claim for intent to defraud fraudulent transfer, and includes any facts upon which a plaintiff might rely to attempt to extend the statute of limitations.

In *Fitness Quest Inc. v. Monti*, N. D. Ohio No. 5:06CV2691, 2012 U.S. Dist. LEXIS 116867, at *1 (Aug. 20, 2012), the Honorable Sara Lioi, sitting for this Court, addressed these

7

issues. There, Fitness Quest sued Jonathan Monti for patent infringement and breach of a confidentiality agreement. Monti counterclaimed, and ultimately sought to amend that counterclaim to add a claim for fraudulent transfer under §1336.04(A)(1). Judge Lioi denied leave to amend based on futility. That is, she held that amendment would be futile because the proposed amended complaint would not survive a motion to dismiss in that it failed allege fraud with sufficient particularity. She further held that the statute of limitations barred the proposed claim, so amendment would be futile for that reason also.

As to the claim itself, Judge Lioi found that the allegations were so "speculative and conclusory" that they were "insufficient to provide the Court with any basis from which it could reasonably infer" liability. Id., at p. 9. Allegations based on "information and belief" that the debtor entered a series of fraudulent transactions with the putative defendants, and that the debtor was "believed" to have paid "excessive salaries and bonuses" to those defendants were insufficiently particular to support an inference that the transfers were made with the requisite intention. As such, Judge Lioi found that the claim would not withstand a Rule 12(b) motion to dismiss, and therefore the Court denied the motion to amend.

The same circumstances exist here. The allegations of actual intent fraudulent transfer are too vague and speculative to support an inference of liability. Plaintiff completely fails to allege the date, manner, number, or amount(s) of the transfers in question. Indeed, the allegations of this claim are intentionally broad so that they might catch any legitimate transfer from Squirrels to Mr. Stanfill at a time that was near the time of the subject transfers. Plaintiff has no idea whether any transfers occurred, and therefore must be vague. These allegations are sufficient to support a claim, and therefore the claim should be dismissed.

8

*Fitness Quest Inc.* also supports dismissal based on the statute of limitations. Particularly important was Judge Lioi's explanation that if a fraudulent transfer claimant plans to rely on delayed discovery to extend the statute of limitations, that claimant must plead the facts supporting delayed discovery with specificity. It is expected that Plaintiff will attempt to claim delayed discovery here because, just as in *Fitness Quest*, Plaintiff's claim was filed significantly more than four year after the alleged transfer(s).

ORC §1336.09 provide the limitations periods for fraudulent transfer claims and provides the following deadline:

> (A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant;

While the Amended Complaint is devoid of detail regarding the alleged fraudulent transfer, it provides enough information to demonstrate that the alleged transfer or transfer took place more than four years ago. Because the Amended Complaint was not filed until March 29, 2024, claims based on payments **before March 29, 2020 (four years prior) are barred.** The Amended Complaint does not specify the date of any alleged fraudulent transfers, but concedes that they took place around the same time as Nonce's dealings with Allmine. That is, Plaintiff alleges that "[u]pon information and belief, the monetary transfers from Squirrels to Mr. Stanfill occurred **shortly after** the transactions subject to the lawsuit that resulted in a debt due and owing to Mr. Forsell…". (Amended Complaint, ¶ 54, emphasis added). Those transactions occurred between June 7, 2018 and June 28, 2018. (Amended Complaint, ¶¶ 11-20). If the alleged fraudulent transfer or transfers purportedly took place "shortly after" that time, then they took place long before March 29, 2020. Under no reasonable interpretation does "shortly after" refer to a period

9

of 21 months (the period from June 28, 2018 to March 29, 2020). As such, if such transfers had occurred (which David Stanfill denies) they would be barred by the statute of limitations.

It will not avial Plaintiff to claim that the delayed discovery provision in §1336.09(A) extends the statute of limitations and saves the Amended Complaint because the Amended Complaint is devoid of any allegations regarding delayed discovery, including the mere fact that discovery was (allegedly) delayed. Judge Lioi held in *Fitness Quest Inc.* that a "party 'who seeks to rely on the discovery rule, however, must affirmatively and particularly plead the date of discovery, as a material averment . . ., or face dismissal of the claim.'" Id., at 15, (quoting *Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981)). The Amended Complaint says nothing at all about delayed discovery, including when the discovery took place and how it was made. Further, because the test for delayed discovery is one of reasonableness, it is a critical omission that the Amended Complaint says nothing about *why* Plaintiff did not discover the (alleged) fraudulent transfers sooner. After all, the instant matter has been pending since August 15, 2022, and Plaintiff has conducted no discovery.

The failure to allege any facts regarding delayed discovery prevents Plaintiff from extending the statute of limitations and saving the Amended Complaint from dismissal on limitations grounds.

C. **Plaintiff's constructive fraud claim (§1336.05) is barred by the statute of limitations.**

Plaintiff also attempts to assert a fraudulent transfer claim under §1336.05, sometimes referred to as "constructive fraud." (Amended Complaint, ¶ 58). Section §1336.05 describes two different types of fraudulent transfers, one in §1336.05(A) and the other in §1336.05(B). Plaintiff

fails to identify which of these might apply. However, regardless of whether he asserts his claim under subsection (A) or subsection (B), or both, the claim is barred by the statute of limitations.

Section 1336.09 provides the following relevant limitations periods:

***

(B) If the transfer or obligation is fraudulent under division (A)(2) of section 1336.04 or **division (A) of section 1336.05** of the Revised Code, within four years after the transfer was made or the obligation was incurred;

(C) If the transfer or obligation is fraudulent under **division (B) of section 1336.05** of the Revised Code, within one year after the transfer was made or the obligation was incurred.

Ohio Rev. Code § 1336.09 (emphasis added).

This Motion explains above how the Amended Complaint was filed more than five years after the alleged fraudulent transfer or transfers. Thus, that information will not be repeated here. Additionally, neither §1336.09(A) nor §1336.09(B) contain a discovery provision that would give Plaintiff an opportunity to extend the statute. Accordingly, the Amended Complaint itself proves that the fraudulent transfer claims under §1336.05 are barred by the applicable limitations period or periods.

### D. The Amended Complaint does not relate back to the date of filing.

It will be unavailing for Plaintiff to claim that the "relation back" provision in Civil Rule 15(c) allows amendment of the complaint to add David Stanfill, a new defendant. It is well-settled in the Sixth Circuit Court of Appeals that Rule 15(c) does not allow for the amendment of pleadings to relate back when a plaintiff is attempting to add a ***new*** party defendant. *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir.2012); *McKernan v. City of Seven Hills*, N.D. Ohio No. 1:20-CV-00032-PAB, 2023 U.S. Dist. LEXIS 60452, at *16 (Apr. 4, 2023); *Wolfe v. Ohio*

*Department of Corrections and Rehabilitation*, 2022 WL 1591304; *Peroli v. County of Medina*, 2020 WL-2405354; and *Conte v. White*, 2022 WL 17850705.

**CONCLUSION**

Plaintiff faces a conundrum. He has absolutely no evidence of any specific transfers by Squirrels to David Stanfill, fraudulent or not. But he apparently wants to drag Mr. Stanfill into this matter. Thus, Plaintiff has to allege that such transfers occurred, assuming, without any proof, that they did. However, because the transfers logically would have had to occur around the time of the transactions between Nonce and Allmine, Plaintiff has to allege that was when they occurred, and this creates a statute of limitations problem. It is far too late now to file a fraudulent transfer claim to recover payments made "shortly after" June 28, 2018, so all claims against David Stanfill fail as a matter of law based on the statute of limitations. Because Plaintiff has no evidence of any such transfers, he cannot claim that he discovered those transfers at a time, and under circumstances, that might extend the statute of limitations. There is no evidence of any transfers and therefore no discovery.

Moreover, as to the intent to defraud claim, Plaintiff has failed to plead that claim with the requisite particularity to meet the requirements of Civil Rule 9(b). Again, it is impossible to provide any details about transactions when you have no idea if they even happened.

For these reasons, the Court can and should dismiss the Amended Complaint as to David Stanfill. Mr. Stanfill hereby respectfully moves the Court to do so.

*/s/ Jack B. Cooper*
Jack B. Cooper (#0069321)
Milligan Pusateri Co., LPA
P.O. Box 35459

        4684 Douglas Circle N.W.
        Canton, Ohio 44735
        Phone: (234) 209-9793
        Fax: (330) 409-0249
        Email:  jcooper@milliganpusateri.com
        Counsel for Defendants Squirrels LLC and David Stanfill

**PROOF OF SERVICE**

This will certify that a copy of the foregoing was served on the following by the method(s) indicated below, on April 1, 2024:

Thomas L. Sooy, Esq. (0087865)
James E. P. Sisto, Esq. (0020089)
The Law Offices of Robert A. Schuerger Co., LPA
1001 Kingsmill Parkway
Columbus, OH 43229
PH: 614-824-5731
FAX: 614-824-1120
tsooy@schuergerlaw.com
Attorneys for Plaintiff
By electronic mail only

 Christopher P. Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-6655
(513) 943-6669 (fax)
chris@finneylawfirm.com
Counsel for Defendant Allmine, Inc.
By electronic mail only

        */s/ Jack B. Cooper*
        Jack B. Cooper (#0069321