IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARL FORSELL, | CASE NO. 5:22-CV-01454-CEH |
| Plaintiff, | |
| v. | CARMEN E. HENDERSON<br>UNITED STATES MAGISTRATE JUDGE |
| SQUIRRELS, LLC, ALLMINE, INC.,<br>DAVID STANFILL, | **MEMORANDUM OF OPINION &**<br>**ORDER** |
| Defendant, | |

## I. Introduction

This matter is before the Court on Plaintiff Carl Forsell's (hereinafter "Forsell") Motion for Summary Judgment against Defendant Squirrels, LLC (hereinafter, "Squirrels"). (ECF No. 58). For the reasons below, the Forsell's motion is DENIED.

## II. Background

Defendant Squirrels is an Ohio limited liability company located in North Canton, Ohio that was started by David Stanfill and Andrew Gould. Squirrels is a subsidiary of Scurry Holdings Group LLC ("Scurry") that primarily provides screen sharing software. At the relevant time, Scurry was owned by Stanfill, Gould, Sidney Keith, and Cory Shoaf. In 2018, Stanfill discovered how to program a computer component called a Field Programmable Gate Array ("FPGA") so that it could process cryptocurrency transactions fast enough to create a competitive advantage in the cryptocurrency mining market. In May 2018, Stanfill formed Squirrels Research Labs LLC ("SQRL") to produce and market FPGA Cards, which are modified FPGA units with proprietary

1

programming for use in cryptocurrency mining. At the time of its formation, SQRL was owned by its shareholders: Scurry (or Squirrels), Stanfill, Gould, Keith, and Shoaf.

To get SQRL up and running, the shareholders made initial capital contributions to purchase electronic components and place some early orders. Market considerations caused SQRL to move quicker than anticipated. Suppliers did not want to deal with "fly-by-night" groups and, based on the history of Squirrels' successful business and level of capital resources available to support SQRL, Squirrels opened accounts with the suppliers and began purchasing initial components and placing initial orders. (ECF No. 58-4 at 34-35).

On June 5, 2018, SQRL and Allmine signed a joint venture agreement for Allmine to market SQRL's FPGA Cards.

On June 7, 2018, Forsell placed an order (Order #1042) with Allmine for four FPGA Cards, totaling $14,530.64, paid via PayPal to Allmine. Forsell placed ten additional orders (Order #s 1076, 1084, 1087, 1090, 1094, 1097, 1098, 1099, 1110, and 1121), each for four FPGA Cards, each totaling $14,530.64, with all but two paid via PayPal and the final two via Coinbase Commerce in Ethereum. Also on June 8, 2018, Forsell placed an order (Order #1174) for four FPGA Cards, totaling $14,530.64, paid via bank transfer. On June 9, 2018, Forsell placed another order (Order #1247) for ten FPGA Cards, totaling $36,224.06, paid via Ethereum. On June 13, 2018, Allmine wired $215,000 and $98,000 to Squirrels. The same day, Forsell placed an order (Order #1395) for ten FPGA Cards, totaling $36,224.06, paid via Ethereum. Also on June 13, 2018, Forsell placed an order (Order #1405) for 52 units, totaling $187,973.09, paid via bank deposit to Allmine on June 14, 2018. Forsell placed another order (Order #1406) that same day for thirty units, totaling $108,410.80, paid via bank deposit to Allmine also on June 14, 2018. On June 15, 2018, Allmine wired a payment of $60,000 to Squirrels.

On June 16, 2018, Forsell emailed SQRL at sales@squirrelsresearch.com inquiring about purchasing an additional twenty FPGA Cards. Jessica Gritzan responded to Forsell's request confirming the order for twenty units and attaching Invoice #2860 from Squirrels to Forsell for twenty units, totaling $67,000. The invoice directed that payment be made to Squirrels bank account with JP Morgan Chase. Forsell then requested an additional nineteen FPGA Cards through an email to sales@squirrelsresearch.com. On June 17, 2018, Squirrels issued Invoice #2865 to Forsell for nineteen FPGA Cards, totaling $63,650. On June 18, 2018, Forsell sent a bank transfer of $67,000 to Allmine Inc. for Invoice #2860 and a bank transfer of $63,650 to Allmine Inc. for Invoice #2865.[1]

On June 18, 2018, Forsell placed an order with Allmine (Order #1505) for 19 units, totaling $63,949.58, which he paid via bank deposit. On June 20, 2028, Allmine wired $350,000 to Squirrels.

On June 27, 2018, Forsell requested fifty additional units from SQRL through an email to sales@squirrelsresearch.com. Ms. Gritzan responded the same day by sending Forsell a Squirrels invoice for $167,500 (Squirrels Invoice #2981). On June 28, 2018, Forsell sent a bank transfer of $167,500 to Squirrels' JP Morgan Chase Bank account for Squirrels Invoice #2981.

On June 28, 2018, Forsell requested that 150 additional units be set aside until the week beginning July 9, 2018, pending the outcome of a feasibility study. On July 18, 2018, Ms. Gritzan (Squirrels LLC) followed up with Forsell regarding the outcome of his feasibility study and

---

[1] Forsell asserts in his motion that he made this payment directly to Squirrels. However, the record shows that the beneficiary of the payment was Allmine. (*See* ECF No. 58-2 at 19).

3

whether he wished to proceed with the additional 150 units. Forsell did not place an additional order at that time.

On August 6, 2018, SQRL announced that shipment of hardware units could be delayed until at least the end of 2018 due to semiconductor supply constraints.

On August 14, 2018, Forsell requested a refund for 85 of the 89 FPGA Cards from SQRL via Squirrel Invoice Nos. 2981, 2865, and 2860, citing the delivery delay.[2] That same day, Forsell emailed FPGA Land/Allmine requesting to cancel the outstanding orders. On August 18, 2018, FPGA Land/Allmine cancelled and refunded orders #1042, #1076, #1084, #1087, #1090, #1094, #1097, #1098, and #1099. No further refunds were provided through Allmine.

On August 21, 2018, "Aaron R." responded from SQRL's email "support@squirrelsresearch.com" to Forsell's refund request, stating that refunds would be issued soon but no exact date was given. On August 28, 2018, "Aaron R." informed Forsell that refunds would be processed that week. On November 20, 2018, Forsell followed up with SQRL regarding the status of his refund. On November 26, 2018, Ms. Gritzan responded to Forsell's status request through her Squirrels email account proposing: a partial refund of $60,000; monthly payments of at least $50,000; and interest at a rate of 2%. Ms. Gritzan's signature line indicates the email was sent on behalf of Squirrels and SQRL. On March 15, 2019, Forsell emailed FPGA Land/Allmine and SQRL, stating that he had not received the full refund amount from the cancelled orders. On March 18, 2019, Forsell received an email from FPGA Land/Allmine stating that as part of Allmine Inc.'s joint venture with SQRL, Allmine forwarded the funds from sales to SQRL for fulfillment. Wire transfers show that Allmine wired $723,000 to Squirrels as "vendor payments."

---

[2] It is unclear to this Court whether it is relevant that Forsell asked to be reimbursed for 84 of the cards instead of 89. The amount of the cancelled contracts, however, is not in dispute.

4

Squirrels admits that it received the funds from Allmine for equipment sold to Forsell by SQRL and Allmine. On March 21, 2019, Ms. Gritzan responded via a Squirrels email account: jessica@airsquirrels.com to Forsell's inquiry about his refund, stating that "[w]e're unable to pay the entire amount due at this time but would like to work something out" and suggested that they refund Forsell over time at $50,000 a month. Ms. Gritzan's signature line states the email was sent on behalf of both Squirrels and SQRL. On April 9, 2019, Forsell and Ms. Gritzan, through her Squirrels email account agreed on the outstanding amount due to Forsell in the amount of $774,373.60.[3]

On February 24, 2020, Mr. Stanfill[4] acknowledged Forsell's message on Discord, reiterated the intention to repay the amount, and offered hardware or a stake in a mining operation as alternatives. There is nothing in the record indicating that Forsell agreed to Stanfill's counter-offer.

Forsell has not received any further refunds of the cancelled orders.

The following chart shows Forsell's purchases, payments, and refunds discussed above:

| Date | # of Cards | Amount | Order Number | Paid date | Paid to | Refund Requested | Refund Processed |
|---|---|---|---|---|---|---|---|
| June 7, 2018 | 4 | $14,530.64 | 1042 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1076 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1084 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1087 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1090 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1094 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |

---

[3] Although the Court's calculation of the remaining balance for un-reimbursed purchase orders totals a slightly higher figure matching that of Forsell's figure of $774,523.51 in the electronic communications, the parties have agreed to using $774,373.60 as the outstanding amount.

[4] Under username "GPUHoarder".

5

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| June 7, 2018 | 4 | $14,530.64 | 1097 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1098 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1099 | June 7, 2018 | Allmine | 8/14/2018 | 8/18/2018 |
| June 7, 2018 | 4 | $14,530.64 | 1110 | June 7, 2018 | Allmine | 8/14/2018 | |
| June 7, 2018 | 4 | $14,530.64 | 1121 | June 7, 2018 | Allmine | 8/14/2018 | |
| June 8, 2018 | 4 | $14,530.64 | 1174 | June 8, 2018 | Allmine | 8/14/2018 | |
| June 9, 2018 | 10 | $36,224.06 | 1247 | June 9, 2018 | Allmine | 8/14/2018 | |
| June 13, 2018 | 10 | $36,224.06 | 1395 | June 13, 2018 | Allmine | 8/14/2018 | |
| June 13, 2018 | 52 | $187,973.09 | 1405 | June 14, 2018 | Allmine | 8/14/2018 | |
| June 13, 2018 | 30 | $108,410.80 | 1406 | June 13, 2018 | Allmine | 8/14/2018 | |
| June 16, 2018 | 20 | $67,000 | Squirrels #2860 | June 18, 2018 | Allmine | 8/14/2018 | |
| June 17, 2018 | 19 | $63,650 | Squirrels #2865 | June 18, 2018 | Allmine | 8/14/2018 | |
| June 18, 2018 | 19 | $63,949.58 | 1505 | June 18, 2018 | Allmine | 8/14/2018 | |
| June 27, 2018 | 50 | $167,500 | Squirrels #2981 | June 28, 2018 | Squirrels | 8/14/2018 | |

### III. Procedural Background

On August 15, 2022, Forsell brought a complaint against Defendants Squirrels and Allmine in the United States District Court for the Northern District of Ohio alleging claims for breach of contract and unjust enrichment. (ECF No. 1). Forsell amended his complaint on March 29, 2024, asserting the same causes of action as in the original complaint against Defendant Squirrels. (ECF No. 32 at 10). On March 3, 2025, Forsell moved for summary judgment against Squirrels. (ECF No. 58). Squirrels responded to the motion for summary judgment on April 3, 2025, and moved to strike Exhibits A and B to Forsell's motion. (ECF Nos. 59, 61, respectively). Forsell replied in support of his motion for summary judgment on April 21, 2025. (ECF No. 64).

### IV. Standard of Review

Federal Rule of Civil Procedure 56(a) lays out the standard for summary judgment motions. It provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

6

Fed. R. Civ. P. 56(a). A party asserting that there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court views the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) ("A dispute about a fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party must make a prima facie showing that it is entitled to summary judgment, and it bears the burden of production. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet

7

its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-moving party must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 870 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

V. **Breach of Contract**

A. Law

Forsell alleged a breach of contract claim in violation of the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 (hereinafter the "CISG").[5] " 'The CISG governs contracts for the sale of goods if the parties to the contract are located in different nations and both nations have signed the CISG.' " *Ningbo S-Chande Imp. &*

---

[5] The official English text of the CISG can be found at 52 Fed. Reg. 6262-80 (March 2, 1987), which contains the notice of ratification by the United States. *See* https://archives.federalregister.gov/issue_slice/1987/3/2/6260-6280.pdf#page=3 (last visited July 17, 2025); *see also Authentic English text of the CISG*, CISG-ONLINE.ORG, https://cisg-online.org/Text-of-the-Convention/Authentic-English-text-of-the-CISG (last visited July 17, 2025).

8

*Exp. Co. v. Allied Tech., Inc.*, 696 F. Supp. 3d 400, 404–05 (E.D. Mich. 2023) (quoting *Bus. Mobility Sys., Inc. v. Fibernetics Corp.*, No. 1:13-CV-1224, 2014 WL 12672687, at *10 (W.D. Mich. Apr. 14, 2014)); *see also* CISG, art. 1(1)(a). "[P]arties may by contract choose to be bound by a source of law other than the CISG, such as the [UCC]. If ... the agreement is silent as to choice of law, the [CISG] applies if both parties are located in signatory nations." *Id.* at 405 (quoting *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1028 (2d Cir. 1995)); *see also* CISG, art. 6. The CISG "can and does preempt state contract law to the extent that the state causes of action fall within the scope of the CISG." *Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*, No. 19-cv-4993, 2020 WL 2065034, at *3 (C.D. Cal. Mar. 2, 2020) (quoting *Asante Tech., Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1152 (N.D. Cal. 2001)) (further citations omitted).

The parties do not dispute that the CISG applies here. Forsell operates his business in Singapore and Squirrels is a United States company. Further, Forsell alleges that both the United States and Singapore are signatories to the CISG and there is no indication that Squirrels ever elected to exclude the CISG's application. *CISG: Table of Contracting States*, https://iicl.law.pace.edu/cisg/page/cisg-table-contracting-states (last visited July 7, 2025).

For these reasons, the Court finds that Forsell's breach of contract claim against Squirrels is governed by the CISG.

To establish his breach of contract claim against Squirrels under the CISG, Forsell must show no genuine issue of material fact as to (1) the existence of a contract; (2) his performance; (3) breach by Squirrels; and (4) damage or loss he suffered. *Ningbo Yang Voyage Textiles Co. v. Sault Trading,* No. 18-cv-1961, 2019 WL 5399973, at *3 (E.D.N.Y. Sept. 10, 2019) (citing *Magellan Int'l Corp.*, 76 F. Supp. 2d at 924)). Squirrels concedes that Forsell has alleged the existence of several contracts for the purchase of FPGA Cards and Squirrels does not appear to

9

dispute that Forsell has alleged his performance related to those contracts. Rather, Squirrels contends that Forsell has failed to show that any of those contracts included Squirrels as a party or, that Squirrels breached any contract that resulted in a loss to Forsell.

### B. Analysis

Forsell brings his breach of contract claim against Squirrels. Forsell argues that Squirrels was both a direct party to contracts to purchase FPGA Cards and the beneficiary of contracts with Allmine for the purchase of FPGA Cards. Squirrels argues that the contracts for the FPGA Cards were between Forsell and Allmine and/or Forsell and SQRL, not Squirrels, and that Squirrels served merely as a "payment processor" for the transactions. Forsell argues that Squirrels was directly involved in three of the transactions and that Squirrels is the party that benefitted from the contracts by receiving payment for all of the purchases.

"The CISG 'allows for less formality in the establishment and modification of contracts' than the U.C.C." *Chilean Sea Bass Inc. v. Kendell Seafood Imports, Inc.*, 735 F. Supp. 3d 80, 91 (D.R.I. 2024), *amended*, No. CV 21-337-JJM-LDA, 2024 WL 3861063 (D.R.I. Aug. 19, 2024) (quoting *Laktapol Int'l v. Bassett & Walker Int'l, Inc.*, EP-12-CA-16-FM, 2013 WL 12130452, at *4 (W.D. Tex. Jan. 10, 2013)). A contract under the CISG is formed when there is offer, acceptance, and a "meeting of the minds." 19 CISG, arts. 14, 18, 23. Relevant here is CISG Article 8(1), which provides that "statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was." Under CISG Article 11, "[a] contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form." A proposal is an offer "if it is sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance." CISG, art. 11; *id.*, art. 14(1). Moreover, "a proposal is sufficiently definite if it indicates the goods

10

and expressly or implicitly fixes or makes provision for determining the quantity and the price." *Id.* In turn, an offer is accepted if the offeree makes a "statement ... or other conduct ... indicating assent to an offer." *Id.*, art. 18. Although the CISG does not contain specific provisions for what may constitute a "meeting of the minds," reading Articles 14(1) and 18(1) together informs mutual assent. *See Simar Shipping Ltd. v. Glob. Fishing, Inc.*, 540 F. App'x. 565, 567 (9th Cir. 2013).

1. **Genuine questions of material fact exist as to whether Forsell contracted with Squirrels for the purchase of the FPGA Cards.**

Forsell argues that he contracted with Squirrels for the purchase of the FPGA Cards. As evidence, Forsell directs the Court to invoices he received from Squirrels offering: twenty "BCU 1525 with mode no DIMMS" for the total price of $67,000 (ECF No. 58-2 at 16, Squirrels Invoice No. 2860); nineteen "BCU 1525 with mode no DIMMS" for the total price of $63,650 (*id*. at 18, Squirrels Invoice No. 2865); and fifty "BCU 1525 with mode no DIMMS" for the total price of $167,500 (*id*. at 21, Squirrels Invoice No. 2981).[6] Two of these invoices state that "[s]tock is not reserved until payment has been received" and all three invoices include wire transfer instructions for payment to be made to a JP Morgan Chase Bank account belonging to Squirrels. Forsell also includes purchase orders made to FPGA Land (Allmine) and wire transfers showing payments from Allmine to Squirrels as payment for the orders. Forsell supports this with documents showing that Allmine wired the payments received directly to Squirrels.

---

[6] Squirrels' motion to strike Plaintiff's Exhibits A & B (ECF No. 61) is DENIED. Forsell explained in his Reply that portions of a page of his Affidavit were cut-off when he e-filed the document and reattached the affidavit to his Reply. This refiled affidavit includes the language that true and accurate copies of the order summaries are attached as an exhibit. Exhibit A to the motion for summary judgment includes the order summaries, invoices, and wire instructions. Exhibit B to the motion for summary judgment includes the wire transfers made from Allmine to Squirrels. Nor does Squirrels dispute that it received the funds directly from Forsell and from Forsell through Allmine.

11

Squirrels admits that it received payment from Forsell for the purchases of the FPGA Cards both directly through wire transfer from Forsell and indirectly from Allmine for purchases made by Forsell through FPGA Land/Allmine. Squirrels argues, however, that Forsell did not contract with Squirrels, but with Allmine and SQRL for the purchases and that Squirrels merely acted as a payment processor. As evidence that Forsell contracted with SQRL, but not Squirrels, for the FPGA Cards, Squirrels cites the email correspondence between Forsell and SQRL at sales@squirrelresearch.com. Forsell's inquiries were answered by Jessica Gritzan, using the same sales@squirrelresearch.com email address. Finally, Squirrels argues that Forsell's email correspondence and his original complaint for breach of contract against SQRL demonstrate that Forsell knew that he was contracting with SQRL and not Squirrels for the FPGA Cards.

This Court finds that Forsell has provided evidence from which a reasonable jury could find that he contracted directly with Squirrels for the purchase of eighty-nine FPGA Cards valued at $167,224.33. (Squirrels Invoice Nos. 2860, 2865, and 2981). The invoices could be reasonably interpreted as Squirrels offering to sell Forsell the eighty-nine FPGA cards directly as they bore Squirrels' logo, Squirrels' name, Squirrels' bank account information, and at least two invoices included the term stating that the units would not be reserved for Forsell until payment had been received. *See* CISG, art. 14 ("(1) A proposal for concluding a contract addressed to one or more specific persons constitutes an offer if it is sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance. A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and the price."); *see id.*, art. 15 ("(1) An offer becomes effective when it reaches the offeree."). Even if this Court viewed Forsell as the party making the offer to purchase, Squirrels could be seen as the party accepting Forsell's offer to purchase the goods. *See id.*, art. 18 ("A statement made by or

12

other conduct of the offeree indicating assent to an offer is an acceptance."); *see id.*, art. 72; ("If prior to the date for performance of the contract it is clear that one of the parties will commit a fundamental breach of contract, the other party may declare the contract avoided."); *see also id.*, art. 25 ("A breach of contract committed by one of the parties is fundamental if it results in such detriment to the other party as substantially to deprive him of what he is entitled to expect under the contract[.]").

On the other hand, Squirrels has produced evidence through Forsell's email correspondence to sales@squirrelresearch.com, an email address used and marketed by SQRL, from which a reasonable jury could find that the three orders were placed with SQRL and not Squirrels. SQRL's website directed anyone interested in the FPGA Cards to contact SQRL through the email address sales@squirrelsresearch.com. On June 16, 2018, Forsell emailed sales@squirrelsresearch.com, inquiring whether there were any FPGA Cards available. Ms. Gritzan responded to his inquiry from the same sales@squirrelsresearch.com email address. A reasonable jury could find that Forsell initiated the three orders by email to the sales@squirrelsresearch.com email address. Forsell has not demonstrated that no question of material fact exists as to whether he contracted directly with Squirrels for the purchase of the FPGA Cards.

Accordingly, Forsell has not met his burden on summary judgment to demonstrate the existence a contract between himself and Squirrels. Thus, Forsell is not entitled to summary judgment on his breach of contract claim under the theory that he contracted directly with Squirrels.

The Court notes that Forsell also argues in passing that Squirrels is liable under breach of contract because it benefitted from the cancelled orders he placed through Allmine. However,

Forsell fails to meet his burden of producing evidence or direct this Court to law that would support finding Squirrels directly liable for these transactions with Allmine. The sole example given by Forsell, Order #1121, makes no mention of Squirrels and Forsell fails to explain how Squirrels is liable under the CISG for transactions for which it was not a direct party. (*See* ECF No. 58 at 7-8). For example, Forsell has not argued that Squirrels is liable under theories of third-party beneficiary, alter ego, or piercing the corporate veil. This Court will not make Forsell's arguments for him. Accordingly, Forsell is not entitled to summary judgment on his breach of contract claim against Squirrels for the orders he placed through Allmine.

### VI. Unjust Enrichment

Ohio courts describe unjust enrichment as "quasi-contract." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938)). "Under Ohio law, there are three elements for a quasi-contract claim. There must be: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860 (6th Cir. 2002). "Ohio courts use the phrase 'unjust enrichment' to describe the third requirement for 'quasi-contract.' " *Id*. at 862 n.1. For quasi-contract or unjust enrichment, "the purpose of such claims is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 834 N.E.2d 791, 799 (2005) (quotation omitted).

Generally, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject matter. *Browning v. Ohio Nat'l Life Ins. Co.,* 819 F. App'x 306, 309 (6th Cir. 2020) (citations omitted); *Ret. Ctrs. of Am., Inc. v. St. Leonard Ctr., Inc.*,

14

No. C-3-90-343, 1992 WL 1258517, at *9 (S.D. Ohio July 8, 1992) (collecting authorities) ("courts in Ohio have held that one may not recover for unjust enrichment where an express contract between the parties covers the same subject as the claim of unjust enrichment."). Unjust enrichment claims may be pled in the alternative to breach of contract claims when the existence or validity of the contract is in dispute.

As explained above, genuine questions of material facts prevent this Court from granting Forsell's motion for summary judgment against Squirrels on the breach of contract claim. Because genuine questions of material facts remain as to whether Squirrels is liable to Forsell under breach of contract, this Court will not decide whether Forsell is entitled to judgment against Squirrels under the alternate theory of unjust enrichment. Absent a determination by the fact finder as to whether a contract controls Forsell's action against Squirrels, any decision regarding Forsell's unjust enrichment claim is premature. *Woods v. Brooks*, No. 2:19-CV-5208, 2021 WL 10332159, at *6 (S.D. Ohio Oct. 22, 2021) ("Because the existence of a contract would moot Plaintiff's unjust enrichment claim, the Court reserves ruling on Plaintiff's unjust enrichment claim until a fact finder has determined whether a contract existed between the parties.").

### VII. Conclusion

For the reasons above Forsell's motion for summary judgment is DENIED.

The Court sets a status conference for July 31, 2025, at 10:00 a.m. via telephone. The parties shall be prepared to discuss the potential for mediation and to set final pretrial and trial dates.

IT IS SO ORDERED.

Dated: July 18, 2025

15

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
